1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   GARY GOETHE,                        No. 2:07-cv-01945-MCE-GGH

12          Plaintiff,

13      v.                               MEMORANDUM AND ORDER

14   STATE OF CALIFORNIA,
     DEPARTMENT OF MOTOR VEHICLES,
15
            Defendant.
16

17                         ----oo0oo----

18

19      Presently before the Court is a Motion for Summary Judgment,

20   or alternatively, summary adjudication of issues, brought by

21   Defendant California Department of Motor Vehicles ("Defendant").

22   For the reasons set forth below, the Motion will be granted in

23   part and denied in part.[1]

24   ///

25   ///

26

27      [1] Because oral argument will not be of material assistance,
     the Court orders this matter submitted on the briefs.  E.D. Cal.
28   Local Rule 230(g).

1

**BACKGROUND**

2

3        On September 29, 2006, Plaintiff filed Charge of

4   Discrimination number 555-2006-01115 ("Charge") with the Equal

5   Employment Opportunity Commission ("EEOC"). Def.'s Undisputed

6   Fact ("DUF") No. 1.  Plaintiff checked boxes on the Charge

7   indicating that while he was employed by Defendant he was subject

8   to discrimination based on "race" and "retaliation."  He stated

9   the pertinent facts as follows in that Charge:

10               I was hired on or about November 30, 1987.  My
             current job title is Staff Services Manager I in the
11           Business Consulting Group.

12               In or about 1995, I filed a discrimination lawsuit
             against Respondent.  Since winning my lawsuit, I have
13           been denied numerous promotions and lateral transfers.
             These include:
14
                 On or about March 6, 2006: Manager V, Customer
15           Service/Technology and Manager V, Program Support
             Manager.  On or about May 24, 2006: Manager V
16           International Registration Plan Policy Section Manager.
             On or about June 15, 2006: Manager V, Revenue and
17           Compliance Unit.  All the selectees for the above
             positions were Caucasian.
18
                 On or about August 21, 2006: Manager V, Motor
19           Carrier Permit Policy Section Manager.  The selectee
             for this position is Black, but she has never
20           complained of discrimination, to my knowledge.

21               In or about April 2006, I was denied a lateral
             transfer to Staff Services Manager I FOD Sacramento
22           Headquarters Staff, Position number 438-4800-001,
             Bulletin number 2-06-0400.  The selectee was Caucasian.
23
                 I believe I have been discriminated against
24           because my race, Black, and for engaging in protected
             activity.
25

26   See DUF Nos. 2-5; Pl.'s Dep., 4/18/09, Ex. 15.  At Plaintiff's

27   request, the EEOC issued a Right-to-Sue Notice on August 9, 2007.

28   ///

                                    2

1     In addition to those facts alleged in his EEOC Charge,

2 Plaintiff avers in his Second Amended Complaint that after

3 settling his 1995 lawsuit, he applied for 41 lateral transfers or

4 promotional opportunities between 1998 and 2000, yielding only

5 two interviews.  (Pl.'s Second Am. Compl. ¶ 11.)  Plaintiff

6 further contends that in November 2000, he approached his

7 Department Director about his alleged disparate treatment.

8 Subsequently, he was promoted to his current position.  Id. at

9 ¶ 12.  Plaintiff states that since his promotion, he has applied

10 for 40 additional transfers and/or promotions and has been

11 denied.  Id. at ¶ 13.

12     Based on these claims, Plaintiff alleges five causes of

13 action in his Second Amended Complaint: 1) Disparate Impact

14 Discrimination in violation of Title VII of Civil Rights Act of

15 1964, 42 U.S.C. § 2000e-2(a); 2) Disparate Treatment

16 Discrimination in violation of Title VII of Civil Rights Act of

17 1964, 42 U.S.C. § 2000e-2(a); 3) Retaliation for Engaging in a

18 Protected Activity in violation of Title VII of Civil Rights Act

19 of 1964, 42 U.S.C. § 2000e-3(a); 4) Racial Discrimination and

20 Retaliation in violation of 42 U.S.C. § 1981; 5) Conspiracy to

21 Interfere with Civil Rights in violation of 42 U.S.C. § 1985.

22 (Pl.'s Second Am. Compl. P. 5-10.)

23     On February 25, 2010, Defendant filed its current Motion for

24 Summary Judgment.  In support of its Motion, Defendant submits

25 declarations of selected individuals who state that an applicant

26 more qualified than Plaintiff received each position.

27 ///

28 ///

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Rule 56 also allows a court to grant summary adjudication on part of a claim or defense. See Fed. R. Civ. P. 56(a) ("A party seeking to recover upon a claim ... may ... move ... for a summary judgment in the party's favor upon all or any part thereof."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995); France Stone Co., Inc. v. Charter Twp. of Monroe, 790 F. Supp. 707, 710 (E.D. Mich. 1992).

The standard that applies to a motion for summary adjudication is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a), 56(c); Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp., 477 U.S. at 323 (quoting Rule 56(c)).

4

1    If the moving party meets its initial responsibility, the
2  burden then shifts to the opposing party to establish that a
3  genuine issue as to any material fact actually does exist.
4  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
5  585-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S.
6  253, 288-89 (1968).

7    In attempting to establish the existence of this factual
8  dispute, the opposing party must tender evidence of specific
9  facts in the form of affidavits, and/or admissible discovery
10  material, in support of its contention that the dispute exists.
11  Fed. R. Civ. P. 56(e).  The opposing party must demonstrate that
12  the fact in contention is material, i.e., a fact that might
13  affect the outcome of the suit under the governing law, and that
14  the dispute is genuine, i.e., the evidence is such that a
15  reasonable jury could return a verdict for the nonmoving party.
16  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52
17  (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper
18  Workers, 971 F.2d 347, 355 (9th Cir. 1987).  Stated another way,
19  "before the evidence is left to the jury, there is a preliminary
20  question for the judge, not whether there is literally no
21  evidence, but whether there is any upon which a jury could
22  properly proceed to find a verdict for the party producing it,
23  upon whom the onus of proof is imposed."  Anderson, 477 U.S. at
24  251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)).
25  ///
26  ///
27  ///
28  ///

1  As the Supreme Court explained, "[w]hen the moving party has
2  carried its burden under Rule 56(c), its opponent must do more
3  than simply show that there is some metaphysical doubt as to the
4  material facts .... Where the record taken as a whole could not
5  lead a rational trier of fact to find for the nonmoving party,
6  there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at
7  586-87.

8      In resolving a summary judgment motion, the evidence of the
9  opposing party is to be believed, and all reasonable inferences
10  that may be drawn from the facts placed before the court must be
11  drawn in favor of the opposing party. Anderson, 477 U.S. at 255.
12  Nevertheless, inferences are not drawn out of the air, and it is
13  the opposing party's obligation to produce a factual predicate
14  from which the inference may be drawn. Richards v. Nielsen
15  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),
16  aff'd, 810 F.2d 898 (9th Cir. 1987).

17

18                          **ANALYSIS**

19      **A.    Summary Adjudication of Plaintiff's Sex Discrimination
                Claim is Granted.**

20

21      To establish subject matter jurisdiction over a Title VII
22  claim, a Plaintiff must have exhausted his administrative
23  remedies by filing a timely charge with the EEOC.  42 U.S.C.
24  section 2000e-5(b); B.K.B. v. Maui Police Dep't, 276 F.3d 1091,
25  1099 (9th Cir. 2002).  "The administrative charge requirement
26  serves the important purposes of giving the charged party notice
27  of the claim and 'narrow[ing] the issues for prompt adjudication
28  and decision.'"

                                6

Park v. Howard Univ., 71 F.3d 904, 907 (D.C. Cir. 1995) (quoting
Laffey v. Northwest Airlines, Inc., 567 F.2d 429, 472 n. 325
(D.C. Cir. 1976)).

The permissible scope of a Title VII civil action is limited
to the scope of the administrative complaint and the EEOC
investigation.  B.K.B., 276 F.3d at 1100.  The court "construe[s]
the language of EEOC charges 'with the utmost liberality since
they are made by those unschooled in the technicalities of formal
pleading.'"  Id. at 1100 (quoting Kaplan v. Int'l Alliance of
Theatrical & Stage Employees, 525 F.2d 1354, 1359 (9th Cir.
1975)).  However, "[a]llegations of discrimination not included
in plaintiff's administrative charge may not be considered by a
federal court unless the new claims are 'like or reasonably
related' to the allegations contained in the EEOC charge."
B.K.B., 276 F.3d at 1100 (quoting Green v. Los Angeles County
Superintendent of Schs., 883 F.2d 1472, 1475-76 (9th Cir. 1989)).

With these principles in mind, we consider the claims of the
Plaintiff.  Here, Plaintiff failed to check the box for "sex"
discrimination in his EEOC charge.  In the narrative portion of
the charge, Plaintiff explains that he was denied opportunities
because he was "Black" and in retaliation for filing suit.
Nothing in the charge gives Defendant any notice that a claim for
sex discrimination is being made.  Accordingly, Plaintiff has
failed to exhaust his administrative remedies as to any sex
discrimination claim.  Therefore, this Court lacks subject matter
jurisdiction to adjudicate that portion of his lawsuit.
Defendant's motion for summary adjudication with respect to the
alleged sex discrimination is granted.

7

**B.   Summary Adjudication for Plaintiff's Claims in Paragraphs 11 and 13 of his Second Amended Complaint is Granted.**

The same analysis applied above extends to Plaintiff's claim that he applied for and did not receive 41 positions aside from the five positions, as identified in his EEOC charge, that he claims were wrongfully awarded to others between March and August of 2006.   Specifically, in paragraph 11 of the Second Amended Complaint, Plaintiff states for the first time that he "submitted no fewer than 41 job applications from 1998 to 2000 for lateral transfers or promotional opportunities.   These efforts yielded just two interviews." (Pl.'s Second Am. Compl. ¶ 11.)   Plaintiff further alleges that Plaintiff "repeatedly applied for lateral transfer and promotions within the [DMV]." Id. at ¶ 13. Moreover, despite submitting approximately an additional 40 applications for lateral transfers or promotional opportunities after he was finally promoted in 2000, Plaintiff claims that Defendant has "consistently and systematically refused to transfer or promote" him.  Id.

These two additional claims, which together identify some 81 additional instances of alleged discrimination, were not adequately raised in Plaintiff's EEOC charge.   The EEOC charge discretely refers to lost promotional opportunities in 2006 only, and nowhere alludes to dozens of other instances of claimed discrimination occurring up to six to eight years beforehand.   In his EEOC charge, Plaintiff specifically identified only five Manager V positions and one SSM I lateral transfer in 2006.
///

1   Plaintiff has failed to exhaust his administrative remedies in
2   attempting to substantially broaden the time and scope of the
3   alleged discrimination against him.   In the absence of that
4   exhaustion, this Court lacks subject matter jurisdiction over the
5   vastly amplified charges that Plaintiff now attempts to levy in
6   his Second Amended Complaint.   Defendant's motion for summary
7   adjudication with respect to the additional instances of
8   discrimination alleged in paragraphs 11 and 13 of the Second
9   Amended Complaint is therefore granted.

10
11          C.   **Summary Adjudication of Plaintiff's Claim that the DMV
                 Denied him Five Manager Promotions because he is Black
12               is Denied.**

13
14          Under the McDonnell-Douglas test for assessing Title VII
15  discrimination claims, the plaintiff can establish a prima facie
16  case by showing: (1) he belonged to a protected class, (2) he was
17  performing according to his employer's legitimate expectations
18  (3) he suffered an adverse employment action, and (4) some
19  indication of a discriminatory motive, such as similarly
20  qualified individuals being treated more favorably.   McDonnell
21  Douglas Corp. v. Green, 411 U.S. 792, 802-803 (1973).

22          Once plaintiff establishes a prima facie case of
23  discrimination, the burden shifts to the defendant to articulate
24  a legitimate nondiscriminatory reason for the adverse employment
25  action.   McDonnell Douglas, 411 U.S. at 802-803.

26  ///
27  ///
28  ///

If defendant meets its burden in that regard, the burden shifts back to plaintiff to establish that defendant's proffered reason was a pretext for discrimination.  See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993).

"The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Id. at 507 (quoting Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981)).  Moreover, the "amount that must be produced in order to create a prima facie case is very little." Sischo-Nownejad v. Merced Comm. Coll. Dist., 934 F.2d 1104, 1111 (9th Cir. 1991).

Defendant does not take issue with Plaintiff's ability to state a prima facie case.  Therefore, the burden shifts to the Defendant to articulate a legitimate nondiscriminatory reason for the adverse employment action.

Defendant asserts it is entitled to summary judgment on Plaintiff's claim that the DMV denied him five Manager V positions based on his race because it offers legitimate nondiscriminatory reasons for not selecting Plaintiff for the positions.  Defendant sets forth declarations of ten current and former DMV employees involved in the selection process.  Each declaration details the process by those evaluators assigned a numerical value to each candidate.  The declarations uniformly articulate a nondiscriminatory reason for the fact that a candidate other than Plaintiff was selected.  Some positions were filled with applicants who had more experience, while others were selected because they were more familiar with the particular type of work encompassed within the positions at issue.

Defendant DMV has also submitted the job opportunity bulletins to which Plaintiff responded, along with and the completed scoring sheets for the positions Plaintiff interviewed.  This information satisfies Defendant's obligation to present a legitimate, non-discriminatory reason for not selecting Plaintiff under the McDonnell Douglas framework.  The burden thus shifts back to the Plaintiff to demonstrate that the reason articulated is pretextual.

"A plaintiff can prove pretext in two ways: (1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." Noyes v. Kelly Services, 488 F.3d 1163, 1170 (9th Cir. 2007) (quoting Chuang v. Univ. of Cal. Davis, Bd. Of Trustees, 225 F.3d 1115, 1127 (9th Cir. 2000)).  "All of the evidence [as to pretext] - whether direct or indirect- is to be considered cumulatively." Id. (quoting Raad v. Fairbanks N. Star Borough Sch. Dist., 323 F.3d 1185, 1194 (9th Cir. 2003)).  Moreover, "[a] plaintiff may discredit an employer's proffered reason by demonstrating such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reason for its action that a reasonable factfinder could rationally find that reason unworthy of credence." Bowden v. Potter, 308 F. Supp. 2d 1108, 1119 (N.D. Cal. 2004).  "In addition a plaintiff may demonstrate pretext by showing that the employer treated similarly situated employees outside the plaintiff's protected class more favorably." Id. at 1119-20.

1    Plaintiff first rebuts the evidence offered by Defendant

2  with statistical data.  Plaintiff states that from "1987 to 2007,

3  there were a total of four African-American males in middle

4  management positions out of approximately 500 middle managers" at

5  DMV headquarters in Sacramento. (Pl.'s Opp'n to Mot. for Summ. J.

6  9:5-7 (citing Pl.'s Dec. ¶ 6.)).  Additionally, he states that

7  "[o]f the five persons promoted to Manager V, four are white, and

8  one is an African-American female."  Id. at 9:14-15 (citing Pl.'s

9  Dec. ¶ 15.).  This statistical information can and does support

10  an inference of pretext.  See, e.g., Noyes, 488 F.3d at 1173.[2]

11    Additionally, Plaintiff alleges facts that warrant

12  determination by a jury.  Plaintiff states that he is better

13  qualified than the five persons promoted.  (Pl.'s Opp. to Mot.

14  for Summ. J. at 10:15 (citing Pl.'s Dec. ¶ 16-23.)).  He contends

15  that contrary to the declarations submitted by Defendant, he had

16  knowledge either or superior to the individuals selected for

17  certain Manager V positions.  Id.  A determination as to who is

18  the more qualified candidate is ultimately a factually intensive

19  question best resolved by a jury.

20  ///

21  ///

22

23    [2] The Court notes that Defendant has filed objections to
certain portions of Plaintiff's declaration submitted in support
24  of his Opposition to this Motion, including objections to the
portions of that Declaration cited in both this paragraph and the
25  next paragraph.  Despite those objections, however, Plaintiff may
unquestionably attest to his own perceptions and/or observations
26  while employed at the DMV.  Defendant's objections to those
portions of Plaintiff's Declaration cited herein are accordingly
27  denied.  The Court need not rule on the other portions of
Plaintiff's Declaration not relied upon in reaching its decision
28  in this matter and declines to do so.

12

1   See, e.g., Barefield v. Bd. of Trs. of Cal. State Univ.,

2   Bakersfield, 500 F. Supp. 2d 1244 (E.D. Cal. 2007) ("[I]t is not

3   the role of this Court to determine who was the most qualified,

4   but only to determine if there is a genuine issue of fact for

5   trial."); Lyons v. England, 307 F.3d 1092, 1117 (9th Cir. 2002)

6   ("[W]hether appellants were as qualified as any of the promotion

7   recipients is a factually intensive question best resolved by the

8   jury.").

9        Plaintiff has raised an issue of fact that he may have been

10  as qualified, or even more qualified, than the candidates

11  selected for promotion.  Plaintiff has thus provided sufficient

12  evidence to raise a triable issue of fact that Defendant's

13  proffered reason may be pretextual.  Therefore, Defendant's

14  motion for summary adjudication with respect to Plaintiff's race

15  discrimination claim is denied.

16

17        **D.   Summary Adjudication of Plaintiff's Claim that the DMV
         Denied him a Lateral Transfer Because he is Black is**
18       **Granted.**

19

20       Plaintiff's EEOC charge alleges that Plaintiff was "denied a

21  lateral transfer to Staff Services Manager I FOD Sacramento

22  Headquarters Staff, Position number 438-4800-001, Bulletin number

23  2-06-0400."  DUF No. 57.  Defendant argues that Plaintiff cannot

24  state a prima facie case for discrimination given the fact that

25  the advertised SSM I position was cancelled and the position

26  abolished.

27  ///

28  ///

1    On March 15, 2006, the SSM I position, 438-4800-001, was

2 advertised through bulletin number 2-06-0400.  The position

3 advertised, however, was canceled that same day.  DUF Nos. 58-59.

4 Defendant contends that the position was abolished to establish

5 position number 024-4800-003.  Plaintiff does not allege that he

6 applied for this new position.

7    Plaintiff argues that even though he applied for a position

8 that was literally cancelled the same day it was posted, he was

9 still "rejected" for that position for purposes of establishing a

10 discriminatory adverse employment action.  While Plaintiff

11 admittedly received no letter indicating that he was unqualified

12 or that another candidate had been chosen, he persists in

13 maintaining that the cancellation constitutes a discriminatory

14 rejection.  This is nonsensical.  The Defendant cancelled the job

15 bulletin the same say that it was posted.  Not only did the

16 Defendant not select a candidate over the Plaintiff, it also

17 appears certain that Defendant failed to even consider the

18 Defendant's application since the position was abolished the same

19 day it was posted.

20    Plaintiff nonetheless argues that "the position remained

21 open until it was filled by someone of Plaintiff's

22 qualifications."  (Pl.'s Opp'n to Def.'s Mot. for Summ. J. 13:18-

23 19.)  Plaintiff alleges the position was filled by Jill D.

24 Ledden, a non African-American female.  As evidence of this fact,

25 Plaintiff cites to a Deposition in which a DMV employee, Babette

26 Williams, states that Ms. Ledden was in fact hired.

27 ///

28 ///

14

However, in the same deposition, Ms. Williams admits, consistent with Defendant's version of events as enumerated above, that the DMV position applied for by Plaintiff had in fact been "dropped" for workload reasons.  <u>See</u> Williams Dep., 6/09/09, 48:14-49:5. Thus, the evidence Plaintiff cites actually supports Defendant's claim that the cancellation of the position had nothing to do with Plaintiff.

Given that the Plaintiff has failed to rebut Defendant's evidence with any information demonstrating adverse employment action or some other circumstance indicating a discriminatory motive, Defendant's motion for summary adjudication of Plaintiff's claim that the DMV denied him a lateral transfer because of his color must be granted.

**E.    Summary Adjudication of Plaintiff's Retaliation Claim Based on his EEOC Lawsuit is Granted.**

In order to establish a viable retaliation claim, Plaintiff must demonstrate: (1) that he engaged in protected activity, (2) that his employer was aware of the activity, (3) that he suffered an adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action.  <u>Raad</u>, 323 F.3d at 1197, <u>see also</u> <u>Yanowitz v. L'Oreal USA, Inc.</u>, 36 Cal. 4th 1028, 1042 (2005).

Plaintiff's retaliation claim does not survive summary adjudication because Plaintiff cannot make out a prima facie case of retaliation.  Specifically, Plaintiff cannot establish that the relevant decision makers knew of Plaintiff's protected activity.

15

1    Plaintiff alleges that he was denied the five Manager V
2  positions and a SMM I transfer in retaliation for his filing a
3  discrimination suit against the DMV during 1995.  Following the
4  said charge, the EEOC and the DMV conducted an investigation.
5  During the course of its investigation, the DMV found that it had
6  no information or records regarding Plaintiff's protected
7  activity which occurred eleven years before the EEOC charge was
8  filed.  <u>See</u> Ruiz Decl. ¶ 13; Ex. A, p. 3.  This was probably
9  because the DMV only retains documents for five years.  <u>Id</u>.
10 Additionally, the hiring managers for each of the five positions
11 Plaintiff applied to have submitted declarations.  Each hiring
12 partner declares that he or she was not aware of Plaintiff's 1995
13 discrimination suit against the DMV.  Plaintiff does not offer
14 any evidence to rebut these statements.

15   Plaintiff also alleges that "as a result of [the 1995
16 lawsuit] and <u>subsequent complaints</u>, Defendant has retaliated
17 against Plaintiff."  (Pl.'s Second Am. Compl. ¶ 10.) (emphasis
18 added).  In support of this allegation, Plaintiff claims that in
19 February 2006 he complained to the DMV Deputy Director that he
20 was being treated unfairly and that on June 18, 2006, Plaintiff
21 submitted a grievance to the DMV for discrimination.  (Pl.'s Decl.
22 ¶¶ 7 & 10.)  Additionally, on September 29, 2006, Plaintiff filed
23 a charge of discrimination with the EEOC.  Both filing a complaint
24 with the EEOC and making informal complaints to a supervisor are
25 protected activities.  <u>Ray v. Henderson</u>, 217 F.3d 1234, 1240,
26 n. 3 (9th Cir. 2000).  However, in his 2006 EEOC charge, the one
27 upon which this lawsuit is based, the only protected activity
28 Plaintiff identified was his 1995 discrimination lawsuit.

1   Plaintiff therefore failed to exhaust his administrative remedies

2   with respect to any additional retaliation claims.  Thus,

3   Defendant's motion for summary adjudication with respect to

4   Plaintiff's claim for retaliation must also be granted.

5

6                              **CONCLUSION**

7

8       For the reasons stated above, Defendant's Motion for Summary

9   Judgment (Docket No. 69) as to Plaintiff's claims in their

10  entirety is DENIED.  Summary adjudication is GRANTED, however,

11  with respect to Plaintiff's sex discrimination and retaliation

12  claims, his additional claimed instances of discrimination as

13  alleged in paragraphs 11 and 13 of the Second Amended Complaint,

14  and his claim that he was discriminated against by virtue of the

15  2006 cancelled lateral transfer.  Summary adjudication is DENIED

16  as to Plaintiff's claims that he was discriminated against due to

17  his race in being passed over for transfer and/or promotional

18  opportunities in 2006.  Because the resolution of those claims

19  involves the weighing of disputed issues of material fact, this

20  lawsuit must proceed to trial on that basis.

21      IT IS SO ORDERED.

22
    Dated: May 6, 2010
23

24

25  MORRISON C. ENGLAND, JR.
    UNITED STATES DISTRICT JUDGE
26

27

28

                                  17